ARTHUR C. TADDEI AND ELIZABETH A. TADDEI, PLAINTIFFS v. VILLAGE CREEK
PROPERTY OWNERS ASSOCIATION, INC. AND ALLEN E. RENZ, DEFENDANTS

No. COA11-650-2

(Filed 15 May 2012 )

**1. Associations—homeowners association—restrictive covenants
—properly amended**

The trial court did not err in a case involving the amendment
of restrictive covenants of a homeowners association by ruling
that the covenants were lawfully amended. The covenants were
properly amended, prior to the expiration of the first 20-year
term, according to the language of Paragraph 3 of the covenants.

**2. Associations—homeowners association—restrictive covenants
—amended covenants valid**

The trial court did not err in a case involving the amendment
of restrictive covenants of a homeowners association by ruling
that the provision for changes, division, or combination of lots in
the 2007 amended covenants was valid and reasonable. Neither
plaintiffs' brief nor their complaint made it clear what remedy
plaintiffs sought with regard to individual lot owners who resub-
divided their property under the original covenants and whose
resubdivision was now valid under the amended covenants.

**3. Fiduciary Relationship—breach—president of homeowners
association—insufficient evidence**

The trial court did not err in a breach of fiduciary duty claim
by granting defendant Renz summary judgment. The evidence
presented by plaintiffs did not indicate that Renz breached his
fiduciary duty as the president of the homeowners association
and merely showed that he had a differing opinion from plain-
tiffs on a number of issues regarding the covenants and the
housing development.

Appeal by plaintiffs from order entered 1 November 2010 by
Judge Jerry R. Tillett in Chowan County Superior Court. Heard in the
Court of Appeals 30 November 2011. Petition for Rehearing granted
on 2 April 2012.

*Barry Nakell for plaintiffs-appellants.*

*Hornthal, Riley, Ellis & Maland, L.L.P., by M.H. Hood Ellis, for defendants-appellees.*

HUNTER, Robert C., Judge.

Arthur and Elizabeth Taddei ("plaintiffs") appeal from a judgment entered 1 November 2010 granting summary judgment in favor of the Village Creek Property Owners Association, Inc. ("VCPOA") and VCPOA President Allen E. Renz ("Renz") ("collectively defendants"). Plaintiffs argue that the Amended Covenants enacted by the property owners of Village Creek are invalid; that resubdivision of lots is not permissible in Village Creek; and that plaintiffs produced sufficient evidence of a breach of fiduciary duty by Renz, and, therefore, summary judgment was not appropriate as to that cause of action. An opinion affirming the trial court's order was filed by this Court on 21 February 2012. Plaintiffs filed a Petition for Rehearing, which was granted on 2 April 2012. Upon reexamination, we affirm the trial court's order, but we modify the originally filed opinion. This opinion supersedes the previous opinion filed on 21 February 2012.

## Background

Village Creek is a residential subdivision located in Chowan County, North Carolina. The subdivision was developed in 1986 by Chowan Storage Company and originally contained 45 lots. A Declaration of Restrictive Covenants for Village Creek was filed on 3 July 1986 and was later modified and amended by the Village Creek Amended Declaration of Restrictive Covenants ("the Covenants"). Pursuant to Section 23 of the Covenants, which provided for the incorporation of a homeowners association in which all lot owners would be members, the VCPOA was incorporated on 16 April 1987.

Renz moved to Village Creek in July 2000 and purchased a house one lot away from the Thompson family. Renz and the Thompsons each bought one half of the lot that separated them and then combined each half with their respective lots. Plaintiffs moved to Village Creek in September 2002. In 2005, plaintiffs learned that multiple lot owners, like Renz, were only required to pay assessments on a per-unit-owned basis and not on a per-lot-owned basis. In other words, multiple lot owners were only paying dues based on a single lot ownership, even though they technically owned more than one lot. Plaintiffs filed a lawsuit against the VCPOA and the multiple lot owners, which

resulted in entry of a Consent Judgment stating that the Covenants required that assessments be paid on a per-lot-owned basis. Renz had become president of the VCPOA by the time the Consent Judgment was entered.

On 2 December 2006, the VCPOA Board of Directors, including Renz in his role as president, sent a letter to property owners informing them that for the first time in 20 years they had a right to amend the Covenants. Among the areas for possible amendment were the method of assessment and the subdividing of lots. First, the Board made it clear that they felt that the manner in which they were now required to assess fees pursuant to the Consent Judgment was "unfair in terms of value received by the homeowners relative to the expense actually incurred on their behalf by the Association." Second, the Board acknowledged that the Covenants prohibited the subdivision of lots, but that subdividing had occurred in the past. The VCPOA Board of Directors recommended that the Covenants be amended to "retain the prohibition of building homes on anything less than a full lot," while simultaneously "validat[ing] the legitimacy of previously-combined lots or portions of lots and permit combination of lots or portions of lots in the future . . . ." The letter indicated that a vote of a majority of lot owners was necessary to amend the Covenants. On 6 December 2006, plaintiffs responded with a letter accusing the VCPOA of violating the terms of the Consent Judgment and stating that plaintiffs would challenge any change in the Covenants that were enacted without 100% approval of the property owners.

Despite plaintiffs' objections, the VCPOA continued with the covenant amendment process. A special meeting was held in March 2007 where a majority of lot owners consented to and approved the Amended Covenants. The Amended Covenants specified that assessments would be levied on an original platted lot basis and allowed subdivision of lots prospectively. On 4 April 2007, the Amended Covenants were filed with the Chowan County Register of Deeds. On 31 October 2007, plaintiffs filed a complaint alleging: (1) breach of contract against the VCPOA; (2) a derivative proceeding against the VCPOA; and (3) breach of fiduciary duty against Renz. Both parties filed motions for summary judgment, and, on 1 November 2010, the trial court granted summary judgment in favor of plaintiffs in part and in favor of defendants in part. The trial court determined that: (1) the amended covenants were properly adopted; (2) the provisions in the amended covenants changing the manner of making assessments were not reasonable, and, therefore, were invalid; (3) "the provisions

for changes, divisions, or combination of lots" were reasonable and valid; and (4) Renz did not breach his fiduciary duty. The trial court ruled in favor of defendants "as to all other issues regarding the 2007 Amended and Restated Declaration."

On 3 December 2010, plaintiffs appealed from the portions of the judgment that granted summary judgment in favor of defendants. Defendants did not appeal.

### Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted).

### Discussion

### I.

[1] We first address plaintiffs' argument that the amendments made to the Covenants are invalid pursuant to Paragraph 33 of the Covenants. Generally, restrictive covenants are contractual in nature and a deed incorporating covenants "implies the existence of a valid contract with binding restrictions." *Moss Creek Homeowners Ass'n, Inc. v. Bissette*, 202 N.C. App. 222, 228, 689 S.E.2d 180, 184 (2010). Restrictive covenants should be strictly construed and any ambiguities should be resolved in favor of the unrestrained use of land. *Id.* at 228, 689 S.E.2d at 184-85. Nonetheless, effect must be given to the intention of the parties and strict construction may not be used to defeat the plain and obvious meaning of a restriction. *Id.* at 228, 689 S.E.2d at 185.

Paragraph 33 states:

> Notwithstanding any provision contained herein, Declarant, its successors or assigns, reserves the right to amend, modify or vacate any restriction or covenant herein contained if and only if the restriction or covenant shall be in conflict with an ordinance or other official action by the Town of Edenton and then only to the extent necessary to bring the applicable restriction and covenant into conformity with said ordinance or action of the Town of Edenton.

There is no indication that the Amended Covenants approved in 2007 were for this purpose. However, Paragraph 3 of the Covenants states:

> These covenants and restrictions shall be binding upon the owners and the lands of Village Creek for a period of twenty (20) years from the date of recording of this instrument. They shall be extended automatically for successive periods of ten (10) years unless, prior to the expiration of any term, an instrument executed by the majority of the then owners of lots in Village Creek has been recorded with the Chowan County Register of Deeds revoking or modifying this instrument.

Plaintiffs contend that Paragraph 3 is subject to the limitation in Paragraph 33, stating amendments may be made "if and only if the restriction or covenant shall be in conflict with an ordinance or other official action by the Town of Edenton . . . ." Plaintiffs' argument is without merit.

The plain and unambiguous language in Paragraph 3 of the Covenants states that prior to the expiration of any term, the restrictions in the Covenants may be modified if a majority of lot owners file an instrument with the Chowan County Register of Deeds modifying the Covenants. This provision does not conflict with Paragraph 33, which allows amendments to the Covenants at *any time*, "[n]otwithstanding" the other provisions in the Covenants, so long as the purpose of the amendment is to bring the Covenants into compliance with the ordinances of the Town of Edenton. In sum, there are two methods to amend the Covenants, one pursuant to Paragraph 3 and the other pursuant to Paragraph 33. Paragraph 3 is not subject to the limitation set out in Paragraph 33.

Here, the Covenants were amended pursuant to the procedure set out in Paragraph 3 prior to the expiration of the first 20-year term and were to be effective at the beginning of the next term. The Amended Covenants, dated 15 March 2007, were signed by a majority of Village Creek lot owners, which satisfies the requirement for modification in Paragraph 3 of the Covenants. These Amended Covenants were then filed with the Chowan County Register of Deeds on 4 April 2007, satisfying the other modification requirement in Paragraph 3. As a result, the Covenants were properly amended, prior to the expiration of the first 20-year term, according to the language of Paragraph 3. Consequently, we affirm the trial court's ruling that the Covenants were lawfully amended based on the language of Paragraph 3.

## II.

[2] Next, plaintiffs seem to argue that lots should not have been resubdivided prior to 2007 because Paragraph 7 of the original Covenants prohibited resubdivision of lots in Village Creek, particularly with regard to resubdivision by individual owners as opposed to the developer. Paragraph 7 of the Covenants stated the following prior to the 2007 amendment: "No lots may be resubdivided. Two or more adjacent lots may be made into one lot for one residential structure with the setback above stated to apply to outside, perimeter lot lines of said lots as combined." Despite the clear language of Paragraph 7, lots in Village Creek were still resubdivided. Between 1989 and 2003, seven of the original lots were resubdivided, the first three of these were resubdivided by the developer, Chowan Storage Company. In 2007, Paragraph 7 of the Covenants was modified to allow for the division and combination of lots subject to some limitations. It is clear that resubdivision of lots going forward is valid so long as it is done pursuant to the methods described in Paragraph 7 of the Amended Covenants.

Plaintiffs do not argue that the trial court erred in determining that amended Paragraph 7 is valid and reasonable. Plaintiffs appear to be challenging the resubdivision that occurred in violation of the original Covenants prior to 2007. Plaintiffs do not make it clear exactly what remedy they seek with regards to the lots that have already been resubdivided. Plaintiffs' brief merely makes the argument that Paragraph 7 of the original Covenants did not allow for lots to be resubdivided, which is likely true but no longer an issue under the Amended Covenants. Plaintiffs' complaint asked the trial court for an "order remedying and setting aside any resubdivision of lots" without alleging a specific claim or cause of action pertaining to the prior resubdivision of lots. The lot owners who resubdivided prior to 2007 were not parties to this action.

In sum, neither the plaintiffs' brief nor their complaint makes it clear what remedy plaintiffs sought with regard to individual lot owners who resubdivided their property under the original Covenants and whose resubdivision is now valid under the Amended Covenants. The trial court did not rule on the validity of prior resubdivisions. As such, we affirm the trial court's ruling that "the provision for changes, division or combination of lots in the 2007" Amended Covenants is "valid" and "reasonable."

III.

[3] Plaintiffs' final argument is that sufficient evidence was presented regarding Renz's alleged breach of his fiduciary duty such that summary judgment was improperly entered in favor of Renz. Specifically, plaintiffs claim that Renz included misleading and false statements in his communications about amending the Covenants because he had a personal economic interest in the outcome. While the debate over amending the Covenants was ongoing, Renz was the president of the VCPOA, which was a non-profit corporation. The duties of directors and officers of a non-profit corporation are set out in the North Carolina Nonprofit Corporation Act, N.C. Gen. Stat. § 55A-8 *et seq.* (2009).

According to N.C. Gen. Stat. § 55A-8-30(a) (2009), a director must discharge his duties in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner the director reasonably believes to be in the best interests of the corporation. In doing so, a director may rely on information, opinions, and statements provided by legal counsel or other professionals. N.C. Gen. Stat. § 55A-8-30(b)(2). If a director performs his duties in compliance with this statute then he is not liable for any actions taken as director. N.C. Gen. Stat. § 55A-8-30(d).

The majority of plaintiffs' evidence regarding this issue consists of statements from letters that Renz sent to Village Creek owners in his role as president of the VCPOA. Plaintiffs contend that Renz did not fully explain the situation in his letters; that he misled lot owners as to the issues; and that he explained matters in a way that would benefit his own economic interests while discounting opposing opinions.

While the allegations made by plaintiffs certainly indicate that plaintiffs and Renz were on separate sides of the issues, they do not establish a genuine issue of material fact. None of the examples suggest that Renz was not acting in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner the director reasonably believed to be in the best interests of the corporation. Indeed, many of the examples cited by plaintiffs highlight the differences of opinion that plaintiffs and Renz had with regard to interpretation of the Covenants and how Village Creek should be run in the future. Renz expressed his point of view regarding the amendments and plaintiffs did the same, as evidenced by a letter plaintiffs sent to other property owners expressing concerns and displeasure with Renz and the proposed Amended Covenants.

It is relevant to point out that Renz did request a written legal opinion prior to proceeding with the plan to amend the Covenants. The attorney stated that the Covenants could be amended pursuant to Paragraph 3, but expressed some concerns about the reasonableness of amending the Covenants to require assessments on a per-unit-owned basis. In a letter sent to the Village Creek property owners on 23 February 2007, Renz informed them that he had further discussed the matter with the attorney, and that the attorney was of the opinion that the proposed amendment would likely be deemed reasonable by a court should the matter be litigated; however, Renz attached the written opinion of the attorney in which the attorney expressed some doubts as to the reasonableness of the amendment. There is no indication that Renz engaged in any deceptive tactics. To the contrary, he hired an attorney on behalf of the VCPOA and took measures to ensure that the property owners were kept apprised of the attorney's written conclusions and subsequent conversations Renz had with the attorney.

Plaintiffs are correct in pointing out that Renz had a personal economic interest in the amendments because he was a multiple lot owner. Nevertheless, there is evidence that those who voted to approve the Amended Covenants were aware that Renz was a multiple lot owner and therefore had an interest in the outcome of the votes. In a letter from plaintiffs to all Village Creek property owners, Renz is referred to as a "multiple lot owner." Further, in a letter written by Renz to property owners prior to the vote, he indicated that he was a multiple lot owner. Assuming, *arguendo*, that plaintiffs established that Renz acted in a manner incompatible with his fiduciary duty, this letter evidences that Renz acted in an open, fair, and honest manner. *Estate of Smith v. Underwood*, 127 N.C. App. 1, 9, 487 S.E.2d 807, 812 ("Once a plaintiff establishes a *prima facie* case of the existence of a fiduciary duty, and its breach, the burden shifts to the defendant to prove he acted in an 'open, fair and honest' manner, so that no breach of fiduciary duty occurred." (citation omitted)), *disc. review denied*, 347 N.C. 398, 494 S.E.2d 410 (1997). Knowing of Renz's personal interest and other material facts, the property owners still voted to amend the Covenants.

In sum, the evidence presented by plaintiffs does not indicate that Renz breached his fiduciary duty and merely shows that he had a differing opinion from plaintiffs on a number of issues regarding the Covenants and Village Creek. Renz sought legal counsel on behalf of the VCPOA; the property owners were aware of Renz's status as a

multiple lot owner; and there is no indication that the procedure for amendment stated in the Covenants was not properly followed. As such, we affirm the trial court's grant of summary judgment in favor of Renz.

## Conclusion

Based on the foregoing, we hold that the trial court did not err in granting summary judgment in favor of defendants on the above issues. We affirm the trial court's order.

Affirmed.

Judges GEER and HUNTER, Robert N., Jr. concur.